## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **MATT BRODY, on behalf of himself and all others similarly situated,** | **Civil Action No. 3:04-CV-1931-K** |
| **Plaintiff,** | **ECF** |
| **vs.** | |
| **ZIX CORPORATION, RONALD A. WOESSNER, JOHN A. RYAN, DANIEL S. NUTKIS, STEVE M.YORK, and DENNIS F. HEATHCOTE,** | |
| **Defendants.** | |

## LEAD PLAINTIFF'S MOTION FOR
## <u>CLASS CERTIFICATION AND BRIEF IN SUPPORT</u>

# TABLE OF CONTENTS

Preliminary Statement and Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    1.    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    2.    Lead Plaintiff's Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    The Applicable Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

II.    The Proposed Class Satisfies All The Requirements of
Certification Under Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

    A.    The Requirements of Rule 23(a) Are Met. . . . . . . . . . . . . . . . . . .6

        1.    The Proposed Class More Than Satisfies the
Numerosity Requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        2.    Questions of Law or Fact Common to the
The Members of the Class Exist . . . . . . . . . . . . . . . . . . . . . . .8
        3.    Lead Plaintiff's Claims are Typical of the Claims
Of the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
        4.    The Proposed Class Representatives Will Fairly
And Adequately Protect the Interests of the Class . . . . . . . . . 11

            a.    The Proposed Class Representatives . . . . . . . . . . . . .11
            b.    Zeal and Competence of Counsel . . . . . . . . . . . . . . 12

    B.    The Requirements of Rule 23(b)(3) Are Satisfied . . . . . . . . . . . . . . 13

        1.    Common Questions of Law or Fact Predominate . . . . . . . . . . 13

            a.    Weekly Trading Volume . . . . . . . . . . . . . . . . . . . . . .14
            b.    Response to Financial News . . . . . . . . . . . . . . . . . . 15
            c.    Securities Analysts . . . . . . . . . . . . . . . . . . . . . . . . . .16
            d.    Institutional Investors . . . . . . . . . . . . . . . . . . . . . . . . 16
            e.    Form S-3's . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17
            f.    Market Capitalization and Float . . . . . . . . . . . . . . . .17

        2.    A Class Action is the Superior Method of Adjudication . . . . . 18
Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## Cases

*Barrie v. Intervoice-Brite, Inc.*, No. 3:01-CV-1071-K, 2006 WL 2792199, at *2 (N.D. Tex. Sept. 26, 2006) (Kinkeade, J.) ...................................................................................................... passim

*Bell v. Ascendant Solutions, Inc.,* 422 F.3d 307 (5th Cir. 2005) ..................................................... 14

*Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001), *clarified*, 279 F.3d 313 (5th Cir. 2002) ......................................................................................................................... 5, 11

*Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 296-97 (5th Cir. 2001) ............................ 8

*Cammer v. Bloom*, 711 F.Supp. 1264, 1293 (D.N.J. 1989) ........................................................... 14

*Feder v. Electronic Data Systems Corp.*, 429 F.3d 125, 129-30 (5th Cir. 2005) ......................... 11

*In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 287 (S.D. Tex. 2004) ........................................... 8

*In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. 559, 564 (E.D. Tex 2005) ......................... 6, 8

*In re Reliant Energy ERISA Litig.*, No. 02-2051, 2005 WL 2000707, at *2 (S.D. Tex. Aug. 18, 2005) ................................................................................................................................................ 8

*James v. City of Dallas*, 254 F.3d 551 (5th Cir. 2001) ................................................................. 10

*Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 625 (5th Cir. 1999) ......................... 8, 10

*Oscar Private Equity Investments v. Holland*, No. 03-2761H, 2005 WL 877936, at *2 (N.D. Tex. April 15, 2005) ........................................................................................................................ passim

*Pederson v. Louisiana State University*, 213 F.3d 858, 868 (5th Cir. 2000) ................................. 6

*Stirman v. Exxon Corp.*, 280 F.3d 554 (5th Cir. 2002) ................................................................. 10

*Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 604 (E.D. La. 2006) ....................................... 8

*Unger v. Amedisys, Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) ....................................... 5, 11, 14, 15

*Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981) .......................................... 7

## Statutes

15 U.S.C. § 78u-4(a)(3)(B) ............................................................................................................... 2

Fed. R. Civ. P. 23(a)(3)-(4) .............................................................................................................. 2

Fed. R. Civ. P. 23(b)(3) ..................................................................................................................... 1

Private Securities Litigation Reform Act of 1995 ............................................................................ 2

SEC Rule 10b-5 .................................................................................................................... 3

Sections 10(b) and 20(a) of the Exchange Act ................................................................................ 3

## PRELIMINARY STATEMENT AND SUMMARY

Lead Plaintiff, the Shinabarker Group ("Lead Plaintiff"), comprised of Terry Shinabarker, Joseph Simone, Carlo D'Amico, and C. Eric Ray ("Proposed Class Representatives"), respectfully moves for class certification and submits this memorandum of law in support.  Lead Plaintiff requests that this Court: (i) certify the proposed plaintiff class described below; (ii) appoint Lead Plaintiff as Class Representative; and (iii) appoint its counsel, Schiffrin Barroway Topaz & Kessler, LLP and Murray, Frank & Sailor LLP as Class Counsel and Claxton & Hill as Liaison Class Counsel, pursuant to Fed. R. Civ. P. 23(b)(3) ("Rule 23").  Excluded from the proposed Class are Defendants[1] and certain individuals and entities affiliated with Defendants. ¶ 32.[2]

The proposed class consists of all persons or entities who purchased or otherwise acquired Zix Corporation ("Zix" or the "Company") securities between October 30, 2003 and May 4, 2004, inclusive (the "Class Period"), and who were damaged thereby (the "Class");

Securities fraud cases are ideally suited for class treatment.  Class actions in securities fraud cases not only provide a mechanism to resolve numerous related claims in one forum, but also further the policies underlying both Fed. R. Civ. P. 23 and the Securities Exchange Act of 1934 ("Exchange Act").

As such, Courts overwhelmingly take a liberal reading of Rule 23 in securities fraud actions.  As shown herein, this Action satisfies all of the Rule 23 requirements for class certification and, as such, should be certified.  Additionally, the Proposed Class Representatives,

---

[1]   The defendants herein are Zix, John A. Ryan ("Ryan"), Daniel S. Nutkis ("Nutkis"), Steve M. York ("York"), Ronald A. Woessner ("Woessner"), and Dennis F. Heathcote ("Heathcote") (collectively "Defendants").

[2]   Citations to the Consolidated Complaint For Violations of the Federal Securities Laws (the "Consolidated Complaint") shall appear as "¶__."

who have successfully prosecuted this action to date, including defeating Defendants' motion to dismiss and motion for reconsideration, should be certified as class representatives.

## STATEMENT OF FACTS

### 1.    Procedural History

On or about September 3, 2004, the first of seven class action complaints alleging violations of the federal securities laws was filed against Defendants Heathcote, Nutkis, Ryan, Woessner, York, Wael Mohamed ("Mohamed"), Russell J Morgan ("Morgan"), and Zix.   On November 2, 2004, the Shinabarker Group filed a motion to: (i) consolidate these actions for all purposes; (ii) be appointed as lead plaintiff; and (iii) approve its selection of counsel as lead counsel for the proposed Class.   On January 3, 2005, this Court entered an Order consolidating the seven pending actions for all purposes under Case No. 3:04-CV-1931-K and set a schedule for the filing of a consolidated class action complaint and Defendants' response thereto.

On July 11, 2005, this Court issued a Memorandum Opinion and Order (the "July 11, 2005 Order") concerning the four competing lead plaintiff motions and granting the Shinabarker Group's motion.  Among other things, the Court determined that the Shinabarker Group was the most adequate of the four lead plaintiff movants under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), because "the Shinabarker Group sustained the largest loss, with approximately $563,185…."  July 11, 2005 Order, at 4.  Also, the Court found that the Shinabarker Group met the "typicality and adequate representation requirements" of Fed. R. Civ. P. 23(a)(3)-(4).  *Id.* at 6.

On October 28, 2005, Lead Plaintiff filed the Consolidated Complaint.  Defendants moved to dismiss the Complaint on February 17, 2006.  After fully briefing the issues raised in Defendants' motion, on September 26, 2006, this Court issued a Memorandum Opinion and

Order denying the Defendants' motion in its entirety and concluding that "Plaintiff's complaint sufficiently alleges a Section 10(b) fraud claim against Defendants with requisite particularity. Plaintiff's complaint also sufficiently alleges a Section 20(a) claim against Defendants with the requisite notice."  On October 31, 2006, Defendants filed an answer to the Complaint.   On November 7, 2006, Defendants filed a Motion for Reconsideration of Order Denying Motion to Dismiss, which was opposed by Lead Plaintiff.  The parties fully briefed the Defendants' motion for reconsideration and, on February 25, 2007, this Court denied the Defendants' motion.

**2.      Lead Plaintiff's Allegations**

Zix is a global provider of e-messaging protection and transaction services.  ¶ 15. Defendants Ryan, Nutkis, York, Woessner, and Heathcote were officers of Zix during the Class Period. ¶¶ 16-20.

Lead Plaintiff alleges that throughout the Class Period, Defendants violated Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder, by issuing materially false and misleading statements regarding Zix's core product, PocketScript, in reports filed with the Securities and Exchange Commission ("SEC"), Company press releases, and conference calls with securities analysts.  The Complaint further alleges that these misstatements caused the price of Zix securities to be artificially inflated.

In particular, Defendants substantially inflated the number of physicians already "using" PocketScript and the number of devices "deployed" by Zix.[3]  For example, defendant Ryan stated during an October 30, 2003 analyst conference call that Zix had **already deployed** PocketScript to over 500 physicians -- five times the actual number of deployments of the product at that time.  ¶ 41; 44.

---

[3] As defined by the Company, "deployed" is when PocketScript has been installed in a physician's office and the physician and/or physician's assistants had received training.  A physician was "using"  PocketScript when he/she would write a prescription over the system.

Moreover, based on the patently false number of "deployed" PocketScript devices, Zix issued revenue projections for fiscal years 2003 and 2004 that were directly contradicted by then known facts.  Defendants engaged in these actions knowingly and/or recklessly in order to bolster Zix's stock price to allow insiders to sell more than $4.6 million of their Zix stock at artificially inflated prices and enable the Company to finance its Class Period acquisition of MyDocOnline.  ¶¶ 91-98.

Based on these false projections and materially false statements by Defendants, the price of Zix stock rose dramatically from roughly $9 per share on October 30, 2003, to over $17 per share on April 12, 2004.  During this time, several of the Defendants acted on these high stock prices and sold large portions of their stock – defendant Woessner sold 85.7% of his stock during this time for proceeds of $1,518,576.44; defendant Nutkis sold 80.8% of his stock for proceeds of $1,102,302.45; and defendant York sold 86.2% of his stock for proceeds of $1,490,544.99. The total of proceeds from Defendants' insider sales was $4.6 million.  ¶¶ 92-95.

On the last day of the Class Period, May 4, 2004, Defendants shocked the market by revealing in a conference call with investors and analysts that, despite defendant Ryan's previous statements, Zix had "deployed" only 230 PocketScript devices.  ¶¶ 81-83.  This revelation caused Zix's stock to plummet $2.12 per share or 15.58 percent on May 5, 2004, from $13.61 per share to close at $11.49 per share.  On the following day, shares of Zix fell an additional $2.60 per share or 22.63 percent to close at $8.89 per share.  ¶¶ 84-85.  By July 2004, the stock had fallen to $7 a share for a total loss of nearly 50%.  ¶ 85.

## ARGUMENT

**I.     THE APPLICABLE STANDARDS**

Rule 23 provides, in pertinent part:

> **(a) Prerequisites to a Class Action.**  One or more members of a class
> may sue or be sued as representative parties on behalf of all only if (1) the
> class is so numerous that joinder of all members is impracticable, (2) there
> are questions of law or fact common to the class, (3) the claims or
> defenses of the representative parties are typical of the claims or defenses
> of the class, and (4) the representative parties will fairly and adequately
> protect the interests of the class.
>
> **(b) Class Actions Maintainable.**  An action may be maintained as a class
> action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> . . . .
>
> (3) the court finds that the questions of law or fact common to the
> members of the class predominate over any questions affecting only
> individual members, and that a class action is superior to other available
> methods for the fair and efficient adjudication of the controversy.  The
> matters pertinent to the findings include:  (A) the interest of members of
> the class in individually controlling the prosecution or defense of separate
> actions; (B) the extent and nature of any litigation concerning the contro-
> versy already commenced by or against members of the class; (C) the
> desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; (D) the difficulties likely to be encountered in the
> management of a class action.

Under Rule 23, the proposed class representative bears the burden of demonstrating that a class

action is appropriate and that all requirements of Rule 23 are satisfied.  *Berger v. Compaq*

*Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001), *clarified*, 279 F.3d 313 (5th Cir. 2002).

While a court must conduct a rigorous analysis to find the facts supporting class certification,

going beyond the pleadings to understand the claims, defenses, relevant facts, and applicable

substantive law, it is not to conduct a mini-trial on the merits of the class or individual claims.

*Oscar Private Equity Investments v. Holland*, No. 03-2761H, 2005 WL 877936, at *2 (N.D. Tex.

April 15, 2005) (*citing Unger v. Amedisys, Inc.*, 401 F.3d 316, 321 (5th Cir. 2005)).  *See also*

*Barrie v. Intervoice-Brite, Inc.*, No. 3:01-CV-1071-K, 2006 WL 2792199, at *2 (N.D. Tex. Sept. 26, 2006) (Kinkeade, J.).

## II.    THE PROPOSED CLASS SATISFIES ALL THE REQUIREMENTS OF CERTIFICATION UNDER RULE 23(a)

In order to certify a class pursuant to Rule 23, a plaintiff must satisfy the four requirements of Rule 23(a) and at least one of the conditions under Rule 23(b).  *Barrie*, 2006 WL 2792199, at *3.   As demonstrated below, Lead Plaintiff herein has brought forth sufficient facts to satisfy all of the requirements of Rule 23(a), and the requirements of Rule 23(b)(3) that common questions of law and fact predominate as to all members of the proposed class and that a class action is superior to alternative methods for the fair and efficient adjudication of Defendants' alleged violations of law.

### A.    The Requirements Of Rule 23(a) Are Met

Rule 23(a) establishes four prerequisites to class certification.  Representatives may sue on behalf of a class if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representatives are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

#### 1.    The Proposed Class More Than Satisfies the Numerosity Requirement

Rule 23(a)(1) requires that a proposed class be so numerous that joinder of all class members would be impracticable.  A movant need not establish the exact number of members of the class, but rather, must merely demonstrate that they are sufficiently numerous so that joinder of all members is impracticable.  *See In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. 559, 564 (E.D. Tex 2005) (citing *Pederson v. Louisiana State University*, 213 F.3d 858, 868 (5th Cir. 2000)).  The Fifth Circuit holds the numerosity requirement presumptively satisfied where "any

class composed of the sellers of a nationally traded security during a period in which hundreds of thousands or even millions of shares of the security were traded must necessarily be so numerous that joinder of all members is impracticable." *Holland*, 2005 WL 877936, at *6 (*citing Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981)); *see also Barrie,* 2006 WL 2792199, at *3; *Schwartz v. TXU Corp.*, No. 02-CV-2243-K, 2005 WL 3148350, at * 13 (N.D. Tex. Nov. 8, 2005).

During the Class Period, Zix shares actively traded on the NASDAQ, a well-developed and efficient market.  ¶ 33.  The total number of outstanding shares ranged from approximately 28 million on September 30, 2003,[4] to over 41 million shares on October 30, 2005.[5]  The average daily trading volume for this security during the Class Period was 684,140.  *See* Declaration of Scott D. Hakala, Ph.D., CFA Regarding Market Efficiency, dated April 1, 2007, ("Hakala Decl.") at ¶ 8, App. pp. 11-12.  While the exact number of Class members cannot be determined, Lead Plaintiff believes that there are hundreds or thousands of Class members.  *Id.*  Thus, it is presumed that the proposed Class satisfies the numerosity requirement of Rule 23(a)(1).  *Barrie*, 2006 WL 2792199, at *3 (numerosity established where 32 million shares outstanding and average daily trading of 644,000).

Plaintiffs' counsel plan to furnish notice to the class by publication in widely circulated publications and to mail notice to all class members who can be identified with reasonable effort, including notice to various broker/dealers.  The costs of notice will be advanced by Plaintiffs' Co-Lead Counsel.

---

[4] *See* Zix's quarterly report on Form 10-Q filed with the SEC on September 30, 2003.
[5] *See* Zix's quarterly report on Form 10-Q filed with the SEC on October 28, 2005.

**2.   Questions of Law or Fact Common to
the Members of the Class Exist**

To satisfy the commonality requirement of Rule 23(a)(2), all questions of fact or law

need not be common.  Rather, only some questions need to be common.  *See In re Elec. Data*

*Sys.*, 226 F.R.D. at 564 (finding the commonality requirement satisfied "if at least one issue's

resolution will affect all or a significant number of the class members."); *Barrie*, 2006 U.S. Dist.

LEXIS 69299, at *3 (same).  "The test for commonality is not demanding and is met 'where

there is at least one issue, the resolution of which will affect all or a significant number of the

putative class members.'"  *In re Reliant Energy ERISA Litig.*, No. 02-2051, 2005 WL 2000707,

at *2 (S.D. Tex. Aug. 18, 2005) (quoting *Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620,

625 (5th Cir. 1999.  There is a low threshold for commonality, and the fact that some plaintiffs

have different claims or require individualized analysis does not defeat commonality.  *Turner v.*

*Murphy Oil USA, Inc.*, 234 F.R.D. 597, 604 (E.D. La. 2006); *Schwartz*, 2005 WL 3148350, at

*13 ("The Fifth Circuit has observed that 'the threshold for commonality is not high.'") (*citing*

*Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 296-97 (5th Cir. 2001)).

Where, as here, it is alleged that defendants made "uniform misrepresentations to the

investing public" in filings with the SEC and in press releases, which artificially inflated the

market price of the defendant company's securities, injuring each class member who purchased

such artificially priced securities, the commonality requirement of Rule 23(a)(2) is met.  *In re*

*Elec. Data Sys.*, 226 F.R.D. at 564; *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 287 (S.D. Tex.

2004) ("Lead Plaintiff's allegations regarding the existence, nature, significance, and uniformity

of the fraudulent scheme perpetrated by defendants … via material misrepresentations and

omissions in public statements … constitute issues common to all class members.")

Lead Plaintiff, on behalf of the Class, asserts claims of securities fraud resulting from a continuous course of conduct by Defendants that involved both omissions and misrepresentations in their public statements throughout the Class Period.  The Class members' claims all arise out of the same set of facts and are based upon common legal theories.  Each Class member is confronted with common issues including, but not limited to, whether:

a. Defendants' conduct, as alleged in the Consolidated Complaint, violated the federal securities laws;

b. Defendants' statements to the investing public during the Class Period misrepresented material facts about the business, operations and financial condition of Zix, including:

   1.   statements regarding the number of actual deployments of PocketScript;

   2.   statements regarding the market and sales potential for PocketScript;

   3.   omissions regarding technical complications faced by the Company in deploying PocketScript; and

   4.   forecasts regarding future performance of Zix.

c. Defendants knew or recklessly disregarded that their Class Period statements were materially false and misleading;

d. the price of Zix common stock was artificially inflated due to the Defendants' statements during the Class Period; and

d. members of the Class have sustained damages and the proper measure of damages.

¶ 36.

Therefore, the requirement of Rule 23(a)(2) is easily satisfied.  *See Holland*, 2005 WL 877936, at *6 ("[M]aterial misrepresentations [about the defendants' operations] made in an efficient market inflated the stock price, causing the class to suffer losses.  This is sufficient to meet Lead Plaintiffs' burden to establish commonality.").

### 3.    Lead Plaintiff's Claims are Typical
### of the Claims of the Class

"Rule 23(a)(3) requires that the claims of the class representative not differ significantly from the claims of the class as a whole." *Schwartz*, 2005 WL 3148350, at *13.

> [T]he test for typicality is not demanding.  It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.  Typicality does not require a complete identity of claims.  Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class.

*Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (*citing James*, 254 F.3d at 571).  Like commonality, the test for typicality is not demanding.  *Holland*, 2005 WL 877936, at *6 (*citing Mullen*, 186 F.3d at 625).

Here, Lead Plaintiff's claims are typical of the claims of the members of the Class in that they all arise from the same allegedly unlawful course of conduct and are based on the same legal theories.  Here, Lead Plaintiff has alleged that the members of the Class purchased Zix securities at artificially inflated prices during the Class Period and sustained damages as a result of Defendants' fraudulent conduct.  *See Barrie*, 2006 WL 2792199, at *4 (typicality found where the claims of lead plaintiffs and the potential class members all arose from a common course of conduct and each of the putative class members would bring claims based upon the alleged conduct under the same legal theories); *Schwartz,* 2005 WL 3148350, at *13-14 (finding typicality where lead plaintiffs and class members claims all arose from the same false and misleading statements made by defendants and where those misrepresentations caused the same artificial inflation in lead plaintiffs' and class members' shares).  Accordingly, the Proposed Class Representatives satisfy the typicality requirement of Rule 23(a)(3).

### 4.      The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Class

To certify a class, "[t]he Court must find that the class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members." *Unger*, 401 F.3d at 321.  To satisfy this element, a movant must demonstrate that: 1) there are no conflicts of interest between the proposed representatives and the class they seek to represent; 2) the proposed class representative is willing and abile to take an active role in and control the litigation and to protect the interests of the absentee class members; and 3) that the class counsel has the competence and ability to conduct the litigation.  *Feder v. Electronic Data Systems Corp.*, 429 F.3d 125, 129-30 (5th Cir. 2005); *Berger*, 257 F.3d at 479-80; *Barrie*, 2006 WL 2792199, at *4.  Although a proposed class representative must show a willingness and ability to take an active role in the litigation, a class representative is entitled, and in fact expected, to rely upon class counsel to conduct investigations and draft pleadings.  *Holland*, 2005 WL 877936, at *3-4.  Here, both Lead Plaintiff and its counsel have to this point vigorously pursued this action, thus indicating their willingness to do so and supporting the Proposed Class Representatives' adequacy.  *See Barrie*, 2006 WL 2792199, at *4.

### a.      The Proposed Class Representatives

In *Holland*, the proposed class representative had initiated the complaint because it was clear to him that "based on the conduct of [the company's] management [], there was something actionable here."  Holland, 2005 WL 877936, at *3-4.  He also reviewed discovery materials and directed his attorneys in drafting the amended complaint.  *Id*.  Finally, he believed, based on the investigation of his attorneys, that the defendants knew various statements to be false when made.  *Id*.  The court held that these facts indicated that the lead plaintiff had taken an active role in the litigation, and accordingly granted class certification.  *Id*. at *15.

As will be demonstrated by the depositions of the proposed class representatives, each has taken a diligent and active role in this litigation.  Each of the proposed class representatives has actively monitored the progress of this litigation.  *See Holland*, 2005 WL 877936, at *4.  Moreover, each of the proposed class representatives fully understands his responsibilities as a class representative, including the duty to participate in the lawsuit by taking part in the decision making process and by keeping abreast of the progress of the litigation, as well as the duty to consider the interests of the class just as he would consider his own interests.  Messrs. Shinabarker, Simone, D'Amico, and Ray understand that any settlement must be fair, reasonable, and adequate, and must be approved by the Court.

Messrs. Shinabarker, Simone, D'Amico, and Ray have not received, been promised or offered and will not accept any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this Action, except for (i) such fees, costs and other payments as the Court expressly approves to be paid to them or on their behalf; or (ii) reimbursement, paid by their attorneys, of actual and reasonable out-of-pocket expenditures incurred by them in connection with the prosecution of this Action.  They also understand that they are each responsible for his *pro rata* share of litigation expenses, will receive only his *pro rata* share of any settlement or judgment pursuant to a court approved plan of allocation, and will not receive any additional compensation for being class representative.  Finally, to their knowledge, they are not subject to any special defenses not applicable to the Class as a whole, and suffer from no conflicts that would interfere with the prosecution of this action.

### b.      Zeal and Competence of Counsel

As the firm résumés attached to the Claxton Affidavit  (App., pp. 69-128) attest, Lead Counsel Murray, Frank & Sailer LLP, Schiffrin Barroway Topaz & Kessler, LLP and Claxton & Hill have wide experience in the type of action before this Court and are fully able to adequately

represent the interests of the Class.  *See* App., pp. 72, 87 and 123.  In particular, Murray, Frank

& Sailer LLP has been prosecuting securities class actions for over 16 years, and Schiffrin

Barroway Topaz & Kessler, LLP has been prosecuting securities class actions for 20 years.  *Id.*

That experience has been put to good use in this case; to date, counsel have successfully moved

for consolidation of all related actions, drafted and filed the Consolidated Complaint, and

successfully opposed Defendants' motion to dismiss the Consolidated Complaint.  Claxton &

Hill, local counsel, is also very experienced in securities class actions.  Mr. Claxton has litigated

securities class actions for 26 years.  Moreover, Murray, Frank & Sailer LLP and Schiffrin

Barroway Topaz & Kessler, LLP have each been praised by courts for their zeal and competence

in securities class action litigation.  *Id.*

 In addition, Lead Counsel has no interests antagonistic to the interests of the other

members of the Class.[6]

### B. The Requirements Of Rule 23(b)(3) Are Satisfied

 Lead Plaintiff seeks certification under Rule 23(b)(3).  Therefore, in addition to satisfying

the foregoing elements, Lead Plaintiff must also show that: (1) common questions predominate

over any questions affecting only individual members; and (2) a class action is superior to other

available methods for the fair and efficient adjudication of the controversy.  *See Mullen*, 186

F.3d at 623-24.  Here, common questions of law and fact predominate, and a class action is the

superior (if not the only) method available to fairly and efficiently litigate this securities suit.

### 1. Common Questions of Law or Fact Predominate

 Predominance "tests whether proposed classes are sufficiently cohesive to warrant

adjudication by representation."  *Amchem Prod. Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  In

---

 [6] Plaintiffs' Co-Lead Counsel are advancing costs to fund this action and have fully adequate resources to
fund and pursue this action to conclusion.

order for common questions of law or fact to predominate, "common issues must constitute a

significant part of the individual cases." *Mullen*, 186 F.3d at 626.  The test is "readily met in

certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*,

521 U.S. at 625 (distinguishing asbestos and personal injury cases).

If the circumstances of each plaintiff's alleged reliance on fraudulent representations

differ, then each individual plaintiff will have to prove reliance and the proposed class does not

meet the predominance requirement.  *Barrie*, 2006 WL 2792199, at *5.  Where, however, the

securities at issue are traded on an efficient market, the fraud-on-the-market presumption permits

investors to show reliance as a class.  *Id*.

In determining market efficiency, courts in this Circuit examine the following factors:

> 1) the average weekly trading volume expressed as a percentage of
> outstanding shares; 2) the number of securities analysts following and
> reporting on the stock; 3) the extent to which market makers and
> arbitrageurs trade in the stock; 4) the company's eligibility to file SEC
> registration Form S-3 (as opposed for Form S-1 or S-2); 5) the existence
> of empirical facts "showing a cause and effect relationship between
> unexpected corporate events or financial releases and an immediate
> response in the stock price"; 6) the company's market capitalization; 7) the
> bid-ask spread for stock sales; and 8) float, the stock's trading volume
> without counting insider-owned stock.

*Barrie*, 2006 WL 2792199, at *6 (*citing Bell v. Ascendant Solutions, Inc.,* 422 F.3d 307, 313

n.10 (5th Cir. 2005); *Unger,* 401 F.3d at 323; *Holland*; 2005 WL 877936, at *8-9.  In this case,

the market for Zix shares meets all of the requirements for efficiency articulated in these cases.

### a.    Weekly Trading volume

"A high weekly stock trading volume suggests the presence of active, informed investors

*Unger*, 401 F.3d at 324.  Indeed, a large weekly volume of stock trades is one of the strongest

factors in gauging the efficiency of the market.  *Barrie*, 2006 WL 2792199, at *6.  As noted in

*Cammer v. Bloom*, 711 F.Supp. 1264, 1293 (D.N.J. 1989), the case which set forth the basis for

the test used by the Fifth Circuit to determine whether an efficient market exists, "average weekly trading of two percent or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one; one percent would justify a substantial presumption."

In the instant case, there can be no dispute that the number of shares traded weekly during the putative Class Period approximated 12.39% of the outstanding shares (after discounting the trading volumes reported by NASDAQ by half). (Hakala Decl., at ¶ 8, Ex.s C & D, App. at 11-12).  Indeed, Zix's average daily trading volume, as a percentage of outstanding shares, of 684,140 shares, or a daily turnover rate of 2.55%, is well above the 1-2% minimum courts have found to support market efficiency.  *Barrie*, 2006 WL 2792199, at *6.  Accordingly, this factor weighs in favor of a finding of market efficiency.

### b.      Response to Financial News

The responsiveness of stock to corporate events is "one of the most important market-efficiency factors."  *Unger*, 401 F.3d at 324.  "In an efficient market, where information is nearly perfect, material misstatements alter a stock's price almost immediately." *Id.*  "Evidence of a causal relationship between unexpected corporate events or financial releases and an immediate response in the price of the stock is an important indicator of market efficiency."  *Barrie*, 2006 WL 2792199, at *8.  "Some courts have stated that this factor is paramount to the others in a determination of market efficiency."  *Id.*  In this case, there was a causal relationship between financial news and the response to the stock price.

In *Holland*, the court found a regression analysis of the statistically significant stock movements to be particularly helpful in determining the responsiveness of the stock to news. *Holland*, 2005 WL 877936, at *11.  Lead Plaintiff submits herewith the event study and regression analysis performed by its expert, Scott D. Hakala, Ph.D., CFA, which concludes that

the market for Zix's common shares was efficient in that the market rapidly reacted to and reflected all public information in the share price during the Class Period. Hakala Decl. at ¶ 6; App., pp. 9-11. Dr. Hakala performed a detailed, integrated event study that found that most of the movements in the stock price of Zix over time are explained by a combination of company-specific, industry-specific and market factors (or events). Hakala Decl. ¶¶ 11-17; App., pp. 13-18. The event study found that there were demonstrable dates when statements by the Defendants cited in the Complaint affected the market price of Zix and/or facilitated the inflation in Zix's share price. Hakala Decl. at ¶¶ 13-14, 16; App., pp. 14-17. Additionally, the event study found that various partially corrective events were significant in explaining the decline in Zix's share price during and in the days immediately following the proposed Class Period. ¶ 16, App., p. 17. Accordingly, this factor weighs in favor of a finding of market efficiency.

### c.    Securities Analysts

The number of securities analysts who review and report on a company's stock can increase the likelihood that information disseminated by the corporation is relied upon by the stock trading public. *Barrie*, 2006 WL 2792199, at *7. In this case, two different securities analysts covered and reported on Zix stock, including the well respected brokerage firm Rodman & Renshaw. Hakala Decl. at ¶¶ 8, 10; App., pp. 11-13. This factor also weighs in favor of a finding of market efficiency.

### d.    Institutional Investors

An indicator of market efficiency is the level of institutional ownership of Zix, which ranged from 2,409,339 shares held by a total of 46 institutions on September 30, 2003, to 7,796,363 shares held by 64 identified institutions on September 30, 2004. Hakala Decl., at ¶ 9, App., p. 12. Because institutional investors tend to be more active in monitoring their investments and more sophisticated in their investing, such significant institutional shareholdings

lead to a strong inference of market efficiency. *Id*. Institutions actively traded the shares of Zix

(as indicated by the turnover of holdings from quarter to quarter from September 30, 2003,

through September 30, 2004). *Id.* This factor weighs in favor of a finding of market efficiency.

### e.    Form S-3's

"Form S-3 is a short form for the registration of securities that a company may use if

certain registrant and transaction requirements are met." *Barrie*, 2006 WL 2792199, at *7. "A

company that has filed monthly reports with the SEC for one year and has common equity held

by non-affiliates of the registrant in excess of $75 million is eligible to file Form S-3." *Id*.

"Only corporations whose stocks are actively traded and widely followed are allowed by the

SEC to file Form S-3." *Id.* Accordingly, "courts have recognized eligibility for filing of an S-3

Registration Statement as a factor indicating market efficiency, reasoning that the SEC permits

companies to file an S-3 upon the premise that the stock is traded in an open and efficient

market, such that further disclosure is unnecessary." *Id.* In this case, Zix was eligible to file

Form S-3's, and in fact filed two during the Class Period, on November 3, 2003 and February 12,

2004 during the proposed Class Period. Hakala Decl., at ¶ 6; App., pp. 9-11. Accordingly, this

factor weighs in favor of a finding of market efficiency.

### f.    Market Capitalization and Float

"Market capitalization is another indicator of market efficiency." *Barrie*, 2006 WL

2792199, at *8. "Float is the percentage of a corporation's shares that are held by the public as

opposed to insiders." *Id.* Prices of stocks that have greater holdings by insiders as opposed to

the public are less likely to reflect all available information about the security. *Id.* Market

capitalization is calculated as the number of shares multiplied by the prevailing share price, and

may indicate market efficiency because there is a greater incentive for stock purchasers to invest

in more highly capitalized corporations. *Id.* Investors are more confident investing in

corporations with large market capitalizations because large firm size and dollar trading volume tend to reflect the magnitude of economic incentive to eliminate mispricing.  *Id.*  Accordingly, this factor weighs in favor of a finding of market efficiency.  The total number of outstanding shares ranged from approximately 28 million on September 30, 2003, to over 41 million shares on October 30, 2005.  Hakala Decl., at ¶ 7; App., p. 11.   Of the shares outstanding, the outstanding shares not held by officers or directors were consistently in excess of 26 million.  *Id.* Shares held by non-affiliates had a trading value of $362,587,156 as of February 20, 2004.  *Id.* The trading value of shares held by non-affiliates (the public float) was consistently in excess of $190 million throughout the Class Period.  *Id.*

## 2.   A class action is the superior method of adjudication

Courts uniformly recognize the general superiority of class treatment in securities actions involving large numbers of investors.  *See Amchem*, 521 U.S. at 617.  "Class actions are considered superior when individual actions would be wasteful, duplicative, present managerial difficulty and be adverse to judicial economy."  *Barrie*, 2006 WL 2792199, at *11.  In considering superiority, a court should be mindful of the policy underlying Rule 23 to "achieve economies of time, effort and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Id.* (*citing Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 570 (S.D. Tex. 2000)).

The instant action is no different and is best managed as a class action – if only because the alternative would be the individual adjudication of thousands of individual cases.  Indeed, to require Zix investors to file hundreds or possibly even thousands of individual actions "…would encourage a waste of judicial and private resources."  *See Barrie*, 2006 WL 2792199, at *11. Further, because shareholders may find individual litigation cost-prohibitive, the class mechanism provides a means for fair and efficient resolution of these claims.  Indeed, few

members of the Class would, as a practical matter, be in a position to proceed individually against Defendants. *See Amchem*, 521 U.S. at 617 (a class action is the only feasible method of adjudication where those who have been injured are in a poor position to seek legal redress because they do not have enough information or because redress is disproportionately expensive); *Schwartz*, 2005 WL 3148350, at *16 ("it would be economically prohibitive for all but a limited number of Class Members (i.e., those who had the largest losses) to adjudicate their claims individually.")  Finally, Plaintiff's counsel, who has substantial experience in class action litigation, does not anticipate any significant or unusual difficulties in the management of this litigation as a class action.[7]  Accordingly, the class action device is the superior method for adjudicating the claims of the members of the Class.

Finally, because Zix's corporate headquarters and principal place of business was located in Dallas during the Class Period, this is the most desirable forum in which to prosecute this action. *Schwartz*, 2005 WL 3148350, at *16 ("Many of the acts and practices complained of originated in [Dallas], and much of the evidence and many of the witnesses relevant to Lead Plaintiff's claims are found in the [Dallas] area.")  Accordingly, the superiority of resolving this litigation by means of a class action is evident.

## CONCLUSION

For the reasons set forth herein, Lead Plaintiff respectfully requests that i) this action should be certified as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein; ii) the Proposed Class Representatives

---

[7]  Plaintiffs' counsel believe that class certification discovery will include depositions of the proposed class representatives, possible depositions of both sides' experts on market efficiency and related document production, all of which Plaintiffs' counsel believe can be accomplished within the time frame previously mentioned by the Court.

should be certified as class representatives; and (iii) the Proposed Class Counsel and Liaison

Class should be appointed.


Dated:  April 13, 2007                          Respectfully submitted,

                                                **CLAXTON & HILL**

                                                s/Roger F. Claxton
                                                Roger F. Claxton
                                                State Bar No. 04329000
                                                Robert J. Hill
                                                State Bar No. 09652100
                                                3131 McKinney Avenue, Suite 700
                                                Dallas, Texas  75204
                                                Telephone:  (214) 969-9029
                                                Facsimile:   (214) 953-0583

                                                *Liaison Counsel for Lead Plaintiff*

                                                Marvin L. Frank
                                                Lawrence D. McCabe
                                                **MURRAY, FRANK & SAILER LLP**
                                                275 Madison Avenue, Suite 801
                                                New York, NY 10016
                                                Telephone: (212) 682-1818
                                                Facsimile:  (212) 682-1892

                                                Eric Lechtzin
                                                Mark Danek
                                                **SCHIFFRIN BARROWAY TOPAZ &**
                                                   **KESSLER, LLP**
                                                280 King of Prussia Road
                                                Radnor, PA 19087
                                                Telephone: (610) 667-7706
                                                Facsimile:  (610) 667-7056

                                                *Co-Lead Counsel for Lead Plaintiff and the*
                                                *Proposed Class*

## CERTIFICATE OF CONFERENCE

I certify that on April 13, 2007, I conferred with Karl Dial, counsel for defendants and that the defendants oppose this motion.

s/Roger F. Claxton
Roger F. Claxton

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of April, 2007, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this notice as service of this document by electronic means:


Gerard G. Pecht
**FULBRIGHT & JAWORSKI L.L.P.**
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
gpecht@fulbright.com

Karl G. Dial
**FULBRIGHT & JAWORSKI L.L.P.**
Texas Commerce Bank Tower
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
kdial@fulbright.com


I further certify that a true and correct copy of the foregoing document was sent by first class mail to counsel listed below that have not consented in writing to accept this notice by electronic means:

Eric J. Belfi
Marvin L. Frank
Lawrence D. McCabe
Murray, Frank & Sailer LLP
275 Madison Avenue, Suite 801
New York, NY 10016

Thomas A. Dubbs
Goodkind Labaton Rudoff & Sucharow
100 Park Avenue
New York, NY 10017

Eric Lechtzin
Heather Tashman
Schiffrin & Barroway, LLP
280 King of Prussia Road
Radnor, PA 19087

Frank E. Goodrich
Baron & Budd
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219

Jeffrey S. Nobel
Andrew M. Schatz
Schatz & Nobel
1 Corporate Center, Suite 1700
Hartford, CT 06109


s/Roger F. Claxton
Roger F. Claxton