# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MATT BRODY, on behalf of himself and all others similarly situated, | § § § | |
| Plaintiffs, | § § | Civil Action No. 3-04-CV-1931-K |
| v. | § § | ECF |
| ZIX CORPORATION, RONALD A., WOESSNER, JOHN A. RYAN, DANIEL S. NUTKIS, STEVE M. YORK, and DENNIS F. HEATHCOTE, | § § § § § § | |
| Defendants. | § § | |

**DEFENDANT'S EMERGENCY MOTION TO COMPEL PRODUCTION
OF DOCUMENTS AND ANSWERS TO INTERROGATORIES AND
BRIEF IN SUPPORT**

FULBRIGHT & JAWORSKI L.L.P.
  Gerard G. Pecht
  State Bar No. 15701800
  Anne M. Rodgers
  State Bar No. 17133025
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  (713) 651-5151
Telecopier:  (713) 651-5246

ATTORNEYS FOR DEFENDANTS

Of Counsel:
Karl G. Dial
State Bar No. 05800400
Fulbright & Jaworski L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201-2784
Telephone:  (214) 855-8050

31322203.1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

EMERGENCY NATURE OF REQUESTED RELIEF ................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

1.   Plaintiffs Should be Ordered to Provide Discovery Regarding "Confidential
     Sources" ............................................................................................................... 3

     A.   Identities of Witnesses are Discoverable .................................................. 4

     B.   Identities of Witnesses are Not Privileged ................................................ 4

     C.   Identities of Witnesses Do Not Qualify for Work-Product Protection .... 5

     D.   Plaintiffs' Strong Reliance on Confidential Sources as the Purported Basis
          for Suit Makes Discovery Imperative ........................................................ 8

     E.   Alternatively, ZixCorp Has Substantial Need and Undue Hardship
          Sufficient to Overcome any Work-Product Protection (if Applicable) ..... 9

     F.   Discovery Regarding Purported Confidential Witnesses is Consistent with
          the PSLRA ................................................................................................. 11

     G.   There is No Informant/Whistleblower Privilege in Securities Actions .... 11

     H.   Documents Provided to or Received from the Confidential Witnesses Are
          Discoverable .............................................................................................. 12

2.   Plaintiffs Should be Ordered to Provide Discovery Regarding Their Trading
     Histories, Investment Strategies, and Results .................................................... 12

3.   Reservation of Right to Compel Additional Information and Documents .......... 18

CONCLUSION AND PRAYER .................................................................................... 18

CERTIFICATE OF CONFERENCE ............................................................................ 19

CERTIFICATE OF SERVICE ...................................................................................... 20

## TABLE OF AUTHORITIES

### CASES

*In re Aetna, Inc. Sec. Litig.*,
  No. Civ. A. MDL 1219, 1999 WL 354527 (E.D. Pa. May 26, 1999) ..........4, 7, 8, 9, 10 11

*American Floral Serv., Inc. v. Florists' Transworld Delivery Assoc.*,
  107 F.R.D. 258 (N.D. Ill. 1985) ................................................................................6, 7

*Besly-Wells Corp. v. Balasz, Inc.*,
  43 F.R.D. 368 (E.D. Wis. 1968) .....................................................................................6

*Degulis v. LXR Biotechnology, Inc.*,
  176 F.R.D. 123 (S.D.N.Y. 1997)..............................................................................14, 15

*Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*,
  No. 01-0392-Civ-Gold, 2001 WL 34079319 (S.D. Fla. Nov. 1, 2001)...............................7

*Feldman v. Motorola, Inc.*,
  No. 90C5887, 1992 WL 137163 (N.D. Ill. June 10, 1992) ...............................................17

*In re Ford Motor Co.*,
  110 F.3d 954 (3d Cir. 1997) ............................................................................................7

*Goldman v. Alhadeff*,
  No. C89-1061R, 1990 WL 86882 (W.D. Wash. 1990)....................................................17

*Graham v. Casey's Gen. Stores*,
  206 F.R.D. 251 (S.D. Ind. 2002) ....................................................................................6

*In re Grand Casinos, Inc. Securities Litigation*,
  181 F.R.D. 615 (D. Minn. 1998) ...............................................................................16, 17

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ........................................................................................17

*In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*,
  838 F. Supp. 109 (S.D.N.Y. 1993) ................................................................................17

*Hickman v. Taylor*,
  329 U.S. 495 (1947) ...................................................................................................5, 7

*Industrial Clearinghouse, Inc. v. Browning Mfg.*,
  953 F.2d 1004 (5th Cir. 1992) .........................................................................................4

*Infosystems, Inc. v. Ceridian Corp.*,
  197 F.R.D. 303 (E.D. Mich. 2000) ...........................................................................12, 13

*Kline v. Wolf,*
  88 F.R.D. 696 (S.D.N.Y. 1981), *aff'd,* 702 F.2d 400 (2d Cir. 1983)..........................15, 16

*Mazur v. Lampert,*
  No. 04-61159CIV, 2007 WL 917271 (S.D. Fla. 2007) ......................................................8

*Miller v. Ventro Corp.,*
  No. C01-01287 SBA (EDL),
  2004 WL 868202 (N.D. Cal. Apr. 21, 2004).......................................................4, 8, 10, 11

*In re ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fun*
  *(Retirement Accounts) II, L.P. Sec. Litig.,*
  149 F.R.D. 506 (D. Del. 1993) ...................................................................................17

*Orgulf Transp. Co. v. Magnolia Marine Transp.,*
  N. Civ. A. 97-1411, 1998 WL 351845 (E.D. La. June 25, 1998)........................................4

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.,*
  No. C01-20418JW,
  2005 WL 1459555 (N.D. Cal. June 21, 2005)........................................................4, 10, 12

*In re Priceline.Com Inc. Sec. Litig.,*
  No. 3:00CV01884 (DJS),
  2005 WL 1366450 (D. Conn. June 7, 2005) .........................................................4, 10, 11

*Roseman v. Sports and Recreation,*
  165 F.R.D. 108 (M.D. Fla. 1996) .............................................................................16, 17

*Ryan v. Flowserve Corp.,*
  No. 3:03-CV-1769-B (N.D. Tex. May 1, 2006) .........................................................4, 7, 9

*In re Scimed Life Sec. Litig.,*
  No. Civ. 3-91-575, 1992 WL 413867 (D. Minn. Nov. 20, 1992)......................................17

*Shields v. Smith,*
  No. C-90-0349 FMS, 1991 WL 319032 (N.D. Cal. Nov. 4, 1991).....................................17

*State of Ill. v. Borg, Inc.,*
  95 F.R.D. 7 (N.D. Ill. 1984) ........................................................................................7

*In re The AES Corp. Sec. Litig.,*
  849 F. Supp. 907 (S.D.N.Y. 1994) ................................................................................15

*In re Theragenics Corp. Sec. Litig.,*
  205 F.R.D. 631 (N.D. Ga. 2002) .........................................................................4, 6, 8, 11

*U.S. v. El Paso Co.,*
  682 F.2d 530 (5th Cir. 1982) ........................................................................................4

*Upjohn Co. v. United States,*
        449 U.S. 383 (1981) ............................................................................................... 4

*Vardon Gulf Co., Inc. v. Karsten Mfg. Corp.,*
        213 F.R.D. 528 (N.D. Ill. 2003) ............................................................................ 7

*Weiner v. Bach Halsey Stuart, Inc.,*
        76 F.R.D. 624 (S.D. Fla. 1977) ........................................................................... 17

*Weintraub v. Texasgulf, Inc.,*
        564 F. Supp. 1466 (S.D.N.Y. 1983) ..................................................................... 15

*White v. Kenneth Warren & Son, Ltd.,*
        203 F.R.D. 364 (N.D. Ill. 2001) ............................................................................ 6

## STATUTES

Fed. R. Civ. P. 26(b)(1) ....................................................................................................2, 9

Fed. R. Civ. P. 33(b) ............................................................................................................ 8

Defendant Zix Corporation ("ZixCorp") files this Emergency Motion to Compel Production of Documents and Responses to Interrogatories and Brief in Support pursuant to Rule 37 of the Federal Rules of Civil Procedure.

## EMERGENCY NATURE OF REQUESTED RELIEF

Plaintiffs filed their motion for class certification on April 13, 2007. Under the Court's April 27, 2007 Order, *see* Dkt. No. 81, defendants must complete the depositions of the proposed class representatives and plaintiffs' expert by no later than May 28, 2007. Accordingly, the depositions of the proposed class representatives are scheduled for May 22-24, and their expert is scheduled for May 17.

ZixCorp served requests for production and interrogatories on each of the lead plaintiffs on March 23, 2007, shortly after the parties' March 16 meeting pursuant to Rule 26(f), Fed. R. Civ. P. After requesting (and receiving) an extension of time, plaintiffs served their responses on April 30.

Despite (or perhaps because of) the expedited scheduling in this case, plaintiffs have flatly refused to produce most of the requested documents and have similarly refused to answer interrogatories, all of which are relevant to the merits of this action and to the potential certification of this suit as a class action. After an unsuccessful meet and confer, ZixCorp is forced to file this emergency motion to obtain the discovery to which it is entitled.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Two general categories of document requests and interrogatories are in dispute:

(1)     Documents and interrogatory responses pertaining to the identity of and communications with the "Confidential Sources" to whom many of the allegations in plaintiffs' complaint are attributed and who purportedly made statements that are quoted in plaintiffs' complaint; and

(2)     Documents and interrogatory responses pertaining to plaintiffs' securities trading histories, investment strategies, and financial results.

These categories of information are clearly appropriate for discovery in this case where plaintiffs accuse defendants of securities fraud. Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . . The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

Despite the scope of Rule 26(b)(1), plaintiffs have lodged a variety of boilerplate objections and, after conferring among counsel, have maintained their refusal to provide appropriate discovery. As shown below, however, the information ZixCorp has requested is essential to the merits of plaintiffs' claims and will be necessary for the Court's rigorous analysis of class certification, including plaintiffs' adequacy as class representatives and the typicality of their claims. Courts in securities fraud class actions (and in this District) have routinely held that the information ZixCorp seeks is discoverable.

The requested discovery is urgently necessary for ZixCorp to adequately assess class certification issues and provide sufficient information to its experts in advance of the May 28 deadline for defendants' expert reports on class certification issues and for deposing the lead plaintiffs on both merits and class certification issues. Accordingly, ZixCorp respectfully requests that the Court overrule plaintiffs' objections and order plaintiffs to provide documents and complete interrogatory responses *on or before May 14, 2007*, which is just three days before defendants are to take the deposition of plaintiffs' expert. Defendant ZixCorp also seeks its costs and fees in connection with this motion.

**1.   Plaintiffs Should be Ordered to Provide Discovery Regarding "Confidential Sources"**

Plaintiffs' complaint relies heavily on quotes and information attributed to "Confidential Sources." Pursuant to the Order issued by this Court, defendants have less than one month to take depositions of the proposed class representatives -- a task made nearly impossible by plaintiffs' failure to disclose the identities of those witnesses whose purported information is the foundation of plaintiffs' complaint.

ZixCorp timely propounded discovery requests to plaintiffs seeking information related to the identity of the former ZixCorp employees who are "confidential sources" who allegedly provided the basis for the allegations in the complaint. For example, ZixCorp's Interrogatory No. 11 seeks the identities of the purported "confidential sources" referenced in the complaint, and Interrogatories No. 12 and No. 13 seek the sources of information that support or form the basis of the allegations in the complaint.[1]

Plaintiffs' responses object "to the extent that" the interrogatories seek information governed by the attorney work product doctrine.[2] Plaintiff Ray also asserts that the information is protected by the attorney-client privilege and/or unspecified rights of "whistleblowers."[3] Despite plaintiffs' use of hedging language ("to the extent that [privileges are implicated]") and boilerplate objections, plaintiffs have withheld all of the requested information.

---

[1] ZixCorp's interrogatories to plaintiffs Ray, Shinabarker, and D'Amico are attached as Exhibits A, B, and C, respectively, to this motion.

[2] The responses of plaintiffs Ray, Shinabarker, and D'Amico to ZixCorp's interrogatories are attached as Exhibits D, E, and F, respectively, to this motion.

[3] *See* Exh. D at 9.

### A.   Identities of Witnesses are Discoverable

The clear weight of authority -- including decisions within this District -- holds that the identities of confidential witnesses referenced or allegedly quoted in a plaintiff's complaint are discoverable. *See, e.g., Ryan v. Flowserve Corp.*, No. 3:03-CV-1769-B, Order at 2 (N.D. Tex. May 1, 2006);[4] *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, 2005 WL 1459555 (N.D. Cal. June 21, 2005); *In re Priceline.Com Inc. Sec. Litig.*, 2005 WL 1366450 (D. Conn. June 7, 2005); *Oscar Private Equity Inv. v. Holland*, No. Civ. 3:03-CV-2761H (N.D. Tex. Dec. 15, 2004);[5] *Miller v. Ventro Corp.*, 2004 WL 868202, at *2 (N.D. Cal. Apr. 21, 2004); *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 631 (N.D. Ga. 2002); *In re Aetna Inc. Sec. Litig.*, 1999 WL 35427 (E.D. Pa. May 26, 1999); *Orgulf Transp. Co. v. Magnolia Marine Transp.*, 1998 WL 351845, at *2 (E.D. La. June 25, 1998).

### B.   Identities of Witnesses are Not Privileged

Plaintiffs' objection that the identities of the purported confidential sources are protected by the attorney-client privilege is insupportable -- they are third-party witnesses. The attorney-client privilege protects only ***confidential*** communications between ***the client*** and his or her attorney. *Industrial Clearinghouse, Inc. v. Browning Mfg.*, 953 F.2d 1004, 1007 (5th Cir. 1992) (emphasis added). Further, it pertains only when the client seeks legal advice. *U.S. v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982). Moreover, it "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). The attorney-client privilege does not protect the identities of third-party witnesses whom plaintiffs chose to quote or attribute allegations in their publicly filed complaint.

---

[4] Order attached as Exhibit G to this motion.

[5] Order attached as Exhibit H to this motion.

**C.     Identities of Witnesses Do Not Qualify for Work-Product Protection**

The identities of purported confidential witnesses are not work product. The work-product doctrine protects from discovery the mental impressions of any attorney or an attorney's notes, not the underlying facts -- even if those facts were learned from work-product documents that are not themselves discoverable. 8 C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure* § 2024 at 337-38 (citing Fed. R. Civ. P. 26(b)(3)); *see also Hickman v. Taylor*, 329 U.S. 495 (1947). The identities of witnesses purportedly having knowledge of relevant facts are discoverable. *See, e.g., American Floral Serv., Inc. v. Florists' Transworld Delivery Assoc.*, 107 F.R.D. 258, 260 (N.D. Ill. 1985) (citing *Besly-Wells Corp. v. Balasz, Inc.*, 43 F.R.D. 368, 371 (E.D. Wis. 1968)).

Information regarding the identities of purported confidential witnesses (or "confidential sources") is simply not what is meant by "work product." It is helpful to the analysis to set forth the well-understood parameters under which this or any other work product dispute must be evaluated. Rule 26(b) defines the scope of discovery as including "any matter, not privileged, that is relevant to the claim or defense of any party" or, upon a showing of good cause, "any matter relevant to the subject matter involved . . . ."

Rule 26(b)(1) sets forth some categories of information that are discoverable, and includes *"the identity and location of persons having knowledge of any discoverable matter."* Even after the 2000 amendments to Rule 26, it is well-established that courts must employ a liberal discovery standard in keeping with the spirit and purpose of this rule. *See, e.g., Graham v. Casey's Gen. Stores,* 206 F.R.D. 251, 253 (S.D. Ind. 2002); *In re Theragenics Corp. Secs. Litigation,* 205 F.R.D. 631, 636-37 (N.D. Ga. 2002); *White v. Kenneth Warren & Son, Ltd.,* 203 F.R.D. 364, 366 (N.D. Ill. 2001). Accordingly, discovery should ordinarily be allowed unless it is clear that the information sought has no possible bearing on the claims and defenses of the

parties or otherwise on the subject matter of the action. *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, No. 01-0392-Civ-Gold, 2001 WL 34079319, at *2 (S.D. Fla. Nov. 1, 2001).

Through a series of amendments since the Rule was adopted, the current post-2000 Rule 26 codifies specific limitations on this broad general rule of discovery. One of those limitations is found in Rule 26(b)(3):

> *Trial Preparation: Materials.* Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Rule 26(b)(3) thus ***does not*** limit discovery into the identity and location of witnesses with knowledge of "any discoverable matter" as described in Rule 26(b)(1). The codified "work product" rule does not apply to the facts of a case that are known or gathered in preparation for litigation or trial, the most obvious example of which is the identity of witnesses and persons with knowledge. *E.g., In re Ford Motor Co.*, 110 F.3d 954 (3d Cir. 1997); *Vardon Gulf Co., Inc. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 534 (N.D. Ill. 2003).

Other provisions of the rules amply make this point clear. Rule 26(a)(1)(A) requires the disclosure at the initial stages of a case of the name and address of "individual[s] likely to have discoverable information that the disclosing party may use to support its claims or defenses, . . . identifying the subjects of the information." Rule 26(a)(3)(A) then requires a more specific disclosure as trial approaches of the name, address, and telephone number of those individuals "whom the party expects to present and those whom the party may call if the need arises . . . ." The drafters of these rules were mindful of the "work product" nature of identification of persons known to a party. "A party is no longer obligated to disclose witnesses or documents, whether

favorable or unfavorable, that it does not intend to use . . . . Because the disclosure obligation is limited to material that the party may use, it is no longer tied to particularized allegations in the pleadings." Rule 26(a)(1) advisory committee's note, 2000 Amends. Consequently, under the plain language of the operative rule in this matter, a claim of work product protection in response to an interrogatory asking for the identity of specific witnesses identified in a complaint must fail. No better authority for this proposition can be found than the original work product case, *Hickman v. Taylor*, 329 U.S. 495 (1947). That decision clearly distinguishes "facts" that govern the particular litigation from trial preparation documents created by or generated for attorneys.

"Only tangible (rule 26(b)(3)) and intangible (*Hickman*) materials prepared by an attorney with an eye toward litigation, and revealing his or her mental processes are protected from disclosure." *American Floral Serv., Inc.*, 107 F.R.D. at 260 (citing *Hickman v. Taylor*, 329 U.S. at 510-11). Plaintiffs' purported "confidential sources" have already been described in pleadings. The mere identification of those persons will tell ZixCorp nothing new about the "mental processes" of plaintiffs' counsel. *Id.; accord State of Ill. v. Borg, Inc.*, 95 F.R.D. 7, 8-9 (N.D. Ill. 1984).

The facts at issue, the identity of plaintiffs' purported "confidential sources," should not be misconstrued as work product. Simply, the work-product immunity does not allow plaintiffs to conceal the identity of confidential witnesses described in the complaint. *See, e.g., Ryan v. Flowserve Corp.*, No. 3:03-CV-1769-B, Order at 2 (N.D. Tex. May 1, 2006);[6] *Oscar Private Equity Inv. v. Holland*, No. Civ. 3:03-CV-2761H (N.D. Tex. Dec. 15, 2004);[7] *In re Aetna, Inc. Sec. Litig.*, 1999 WL 354527 (E.D. Pa. May 26, 1999); *American Floral Servs., Inc. v. Florists'*

---

[6] Exh. G.

[7] Exh. H.

*Transworld Delivery Ass'n,* 107 F.R.D. 258 (N.D. Ill. 1985); *In re Theragenics Corp. Sec. Litig.,* 205 F.R.D. 631 (N.D. Ga. 2002); *Mazur v. Lampert,* 2007 WL 917271, at *2-4 (S.D. Fla. 2007).

### D.   Plaintiffs' Strong Reliance on Confidential Sources as the Purported Basis for Suit Makes Discovery Imperative

The discovery of the identities of plaintiffs' "confidential sources" is crucial when the alleged information of these witnesses has served as the purported basis for the suit. When "plaintiffs [choose] to build their complaint on a foundation of statements from [confidential witnesses], the identities of those individuals are highly relevant and reasonably calculated to lead to discoverable evidence." *Miller,* 2004 WL 868202, at *2. There the court held "that a list containing the names of the twenty-two CWs [confidential witnesses] does not constitute work product and that even if it were work product, the need for the information and the hardship otherwise entailed outweighs any minimal work product protection." *Id. at* *2. "Given the compressed discovery schedule, it is simply not practical for Defendants to interview or depose all 165 individuals who could possibly be the CWs." *Id.*

Similarly, the court in *In re Aetna Inc. Sec. Litig.* held that the information sought was not protected by the work product doctrine, or in the alternative, at most had minimal work product content, and that the need for the information sought outweighed any minimal work product content. *Id.,* 1999 WL 35427, at *2. The *Aetna* court appropriately likened the request for "confidential witness" identities to "class contention interrogatories" allowed under Fed. R. Civ. P. 33(b), which are "a common discovery tool used to discover the facts underlying the contentions set forth in the pleadings." *Aetna,* 1999 WL 35427, at *2. For instance, the court noted that plaintiffs had made allegations attributed to a "former Aetna vice-president of sales and customer service." *Id.* Because the plaintiffs "chose to include this allegation in their

second amended complaint and chose the way in which the allegation was framed," the
defendants were entitled to discover the name of the former vice-president." *Id.* at *4.

Consistent with other Northern District of Texas decisions, this Court should order
plaintiffs to provide the identities of their alleged confidential sources. *See Ryan v. Flowserve
Corp.*, No. 3:03-CV-1769-B, Order at 2 (N.D. Tex. May 1, 2006);[8] *Oscar Private Equity Inv. v.
Holland*, No. Civ. 3:03-CV-2761H (N.D. Tex. Dec. 15, 2004).[9]

### E.   Alternatively, ZixCorp Has Substantial Need and Undue Hardship Sufficient to Overcome any Work-Product Protection (if Applicable)

Even if the "confidential source" information sought could be considered "work-
product," ZixCorp can demonstrate substantial need and undue hardship to overcome such
protection. The work-product privilege is a qualified immunity available for both opinion work-
product (*e.g.*, an attorney's mental impressions) and ordinary work-product (*e.g.*, material
containing factual information such as notes). ZixCorp does not seek mental impressions of
plaintiffs' attorneys, just facts. Thus, the analysis for ordinary work-product controls. A
privilege applicable to ordinary work-product may be overcome by (1) a substantial need for the
information and (2) an inability to otherwise obtain the material without undue hardship. Fed. R.
Civ. P. 26(b)(3).

ZixCorp has a substantial need for the identity of the six "confidential sources" because
they supplied an overwhelming majority of the allegations in the complaint. ZixCorp's only
means of obtaining the identities of the purported confidential sources is to investigate and
potentially depose countless witnesses (more than 100 Zix/Pocketscript employees and past
employees are included in the universe of possible "confidential sources"). Requiring ZixCorp

---

[8] Exh. G.

[9] Exh. H.

to distill six names from the vast universe of possible witnesses in this manner would impose an undue hardship in both time and expense. Moreover, doing so within the time allotted pursuant to the scheduling order issued by the Court is impossible as a practical matter. Compelling plaintiffs to simply provide these names will greatly reduce the overall discovery cost of the litigation and potentially eliminate the need for ZixCorp to repeatedly seek leave of Court to exceed the number of depositions allowed or to extend applicable discovery deadlines.

Other courts in analogous situations have recognized this undue hardship. As noted above, the courts in both *Miller* and *Aetna* found that even if work-product principles were in play, considerations of substantial need and undue hardship warranted the production of the witness information. *Miller*, 2004 WL 868202, at *2; *Aetna* 1999 WL 354527, at *4. The court in *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc.*, 2005 WL 1459555 (N.D. Cal. June 21, 2005), similarly held that while an interrogatory seeking identity of all persons plaintiffs interviewed during the course of their investigation sough might touch upon work product, there was "substantial need and undue hardship" to overcome any qualified protection, due to the tight time-frame provided under the court's scheduling order and the long list of potential witnesses set out in plaintiffs' initial disclosures. *Id.* at *5. The court held that "the work product doctrine does not shield the discovery of documents or people with knowledge of the facts relevant to Plaintiffs' claims." *Id.*

The court in *In re Priceline.Com Inc. Securities Litigation*, 2005 WL 1366450, reached the same conclusion and compelled responses to interrogatories seeking: (i) the identity of "each person with whom Plaintiffs or counsel for Plaintiffs communicated in connection with any investigation concerning any allegation in the Amended Complaint" including "those that Plaintiffs purport to have interviewed in connection with this Action" and (ii) the names of

individuals referred to in the Amended Complaint. *Id.* at *3. The court held that while work-product protection initially applied, the information was discoverable because "forcing defendants to ferret through the substantial list of individuals upon whose knowledge plaintiffs have framed their allegations would be an undue hardship." *Id.* at *4. Even if work-product could somehow initially apply to the identities of purported confidential witnesses here, this Court should find that substantial need and undue burden warrant the production of these names to ZixCorp.

### F.     Discovery Regarding Purported Confidential Witnesses is Consistent with the PSLRA

Numerous courts have explained that disclosing the names of persons interviewed by plaintiffs' counsel in securities cases is consistent with the policy consideration underlying the Private Securities Litigation Reform Act (the "PSLRA" or "Reform Act"). For instance, the court in *In re Theragenics Corp. Securities Litigation* granted the defendants' motion to compel answers to interrogatories seeking the names of the individuals upon whom the plaintiffs relied in making the allegations in the complaint. The court rejected the plaintiffs' work product objection, holding that the "disclosure sought here will provide minimal, if any, disclosure of an attorney's thought processes" and that "producing these names complies with the policy behind the Reform Act." 205 F.R.D at 636; *see also Aetna*, 1999 WL 354527, at *4. "[W]hen a plaintiff showcases information obtained from confidential witnesses in an effort to meet the Private Securities Litigation Reform Act, the plaintiff must disclose the identities of those witnesses upon proper interrogatory." *Miller*, 2004 WL 868202, at *1.

### G.     There is No Informant/Whistleblower Privilege in Securities Actions

It is also important to note that there is no "whistleblower" privilege under the PSLRA. Indeed, courts have expressly rejected the suggestion of an "informant privilege" in securities

actions. *See Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems*, 2005 WL 1459555, at *7. Moreover, the parties are currently negotiating a confidentiality agreement that could easily protect any former employee's concerns regarding disclosures to non-parties, including future employers.

### H.   Documents Provided to or Received from the Confidential Witnesses Are Discoverable

ZixCorp's Requests for Production Nos. 31-34 seek documents (including communications) sent, provided, or received by any of the plaintiffs (or their lawyers) to or from any of the six "confidential sources" identified in the complaint.[10] Each of the plaintiffs objected to producing any of the documents based on the attorney work product doctrine,[11] and plaintiff Ray again added attorney-client and "whistleblower" objections.[12]    The requested communications are neither subject to attorney-client privilege nor work product protection. *E.g., Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 306 (E.D. Mich. 2000) (attorney communications with former employees or defendant corporation generally "should be treated no differently from communications with other third-party fact witnesses").    And, as demonstrated above, there is no "whistleblower" protection under the PSLRA.  Plaintiffs should be compelled to produce all responsive documents.

### 2.   Plaintiffs Should be Ordered to Provide Discovery Regarding Their Trading Histories, Investment Strategies, and Results

ZixCorp's discovery requests include interrogatories and requests for production relating to plaintiffs' trading histories, investment strategies, and results, including the following:

---

[10] ZixCorp's requests for production to plaintiffs Ray, Shinabarker, and D'Amico are attached as Exhibits I, J, and K, respectively, to this motion.

[11] The responses of plaintiffs Ray, Shinabarker, and D'Amico to ZixCorp's Requests for Production are attached as Exhibits L, M, and N, respectively, to this motion.

[12] Exh. L.

Interrogatory No. 10 seeks the designation of every brokerage account that each plaintiff maintained from January 2003 to the present with a broker or brokerage firm that deals in the sale or purchase of securities.[13]

Request for Production No. 25 seeks documents relating to the nature, objectives, or investment criteria of any account in which securities are or were held for each plaintiff's benefit.[14]

Request for Production No. 26 seeks documents relating to each plaintiff's purchases, acquisitions, sales, dispositions or exchanges of any securities during the years 2003 and 2004.[15]

Request for Production No. 39 seeks the monthly statements from each plaintiff's stockbrokers during the years 2003 and 2004.[16]

Request for Production Nos. 41 and 42 seeks all documents reflecting each plaintiff's ownership of shares in start-up companies and other companies in the Internet-software industry from January 2003 to the present.[17]

In response to these discovery requests, plaintiffs have asserted a litany of general objections, and then each stated that he has no responsive documents in his possession, custody or control (while simultaneously producing only self-selected pages of their brokerage statements that are heavily redacted).[18] For example, in response to Request for Production No. 26, plaintiff Ray objected that it was overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and further objected "to the extent" the documents and information requested are protected from discovery by the attorney work product doctrine and/or the attorney client privilege. *See* Exh. L at 16. He then claimed to have no documents responsive to this request within his possession, custody, or control -- apparently implying that he does not believe his account statements to be subject to his "possession, custody

---

[13] Exhs. A, B, and C.

[14] Exhs. I, J, and K.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] Exhs. L, M, and N.

or control."   *Id.*   However, he has produced certain pages of his E-Trade Financial account (leaving only information related to ZixCorp trades unredacted), which documents clearly contain the information requested, albeit in pages he decided not to produce or hidden behind voluminous redactions in the pages he did produce.  The other plaintiffs have done the same (indeed, plaintiffs Ray and D'Amico have even redacted the page numbers from the statements so defendants cannot ascertain how many pages are missing; plaintiff Shinabarker has produced only four out of six pages of an "unofficial" statement).  This behavior cannot be countenanced.

Each plaintiff has objected to producing any information or responsive documents in his possession related to any companies other than ZixCorp.[12]  All records relating to plaintiffs' investment history, expertise, and strategies are discoverable in this action because they relate to issues such as reliance, typicality, unique defenses, and alleged losses.

For example, the shareholder-plaintiff in *Degulis v. LXR Biotechnology, Inc.*, 176 F.R.D. 123 (S.D.N.Y. 1997), like the plaintiffs here, refused to produce documents responsive to the following request:

> All documents concerning applications to establish brokerage accounts or other facilities for the purchase and sale of securities or commodities [and] [m]onthly account statements for any securities or commodities account maintained by, or on behalf of, Plaintiff during the period January 1, 1992 to present.

*Id.* at 125.  In response to the request, as here, plaintiff's counsel produced only limited records relating to the securities at issue in the fraud suit.  *Id.*

The court explained, however, that under Section 10(b) of the Securities Exchange Act of 1934, the plaintiff is required to show reliance on the defendants' alleged misrepresentation under two possible theories:  (1) direct reliance, or (2) "fraud on the market."  The court noted

---

[12] *Id.*

that, *as here*, the plaintiff had alleged both theories.[20] The court held that "[w]hen direct reliance is alleged in the Complaint, plaintiffs' sophistication is relevant to the merits of these allegations and a defense of non-reliance." *Id.* at 126 (citations omitted). The court held that the plaintiff's sophistication as an investor, and the possible impact this would have on his reliance on supposed misrepresentations or omissions by the defendants, was a properly discoverable subject and order the plaintiff to respond. *Id. See also In re The AES Corp. Sec. Litig.*, 849 F. Supp. 907, 909-11 (S.D.N.Y. 1994) (ordering the plaintiffs to produce all documents reflecting any security owned, held, or sold by or for the account of any plaintiff during a four-year period and to identify any broker or other financial advisor who had knowledge of any of the plaintiffs; past securities investments).

Moreover, the *Degulis* court further explained that a plaintiff's "sophistication and trading strategies" are also relevant to the issue of class certification: "The determination of whether a class representative is 'typical' might be affected by any unique defenses relating to an investment strategy." *Id.* (citing *Weintraub v. Texasgulf, Inc.*, 564 F. Supp. 1466, 1471 (S.D.N.Y. 1983) (class certification denied where proposed class representative was speculative trader whose peculiar trading activities would give rise to unique defense "that may have the ultimate effect of prejudicing members of the proposed class")); *Kline v. Wolf*, 88 F.R.D. 696, 699-700 (S.D.N.Y. 1981), *aff'd*, 702 F.2d 400 (2d Cir. 1983) (class certification denied where proposed representative was a speculative trader who did not rely on the market subjecting him to "unique defenses' on the issue of reliance inapplicable to the other purported class members which vitiates the typicality of his claims"). The *Degulis* court therefore ordered the plaintiff to

---

[20] Plaintiffs here allege that they relied either "directly or indirectly on the false and misleading statements made by Defendants Zix, Ryan, Nutkis, and York, or upon the integrity of the market in which the securities trade . . . ." Consolidated Complaint ¶ 112, Dkt. No. 43.

produce the requested brokerage records and account statements for all securities and commodities trading activity. *Id.* at 127.

Similarly, the defendants in *Roseman v. Sports and Recreation*, 165 F.R.D. 108 (M.D. Fla. 1996), sought "brokerage statements and all other documents showing all of your trading and holding of public securities from January 1, 1993 to March 14, 1995." *Id.* at 112. The court's analysis in rejecting plaintiffs' objections to production is fully applicable here:

> Plaintiffs contend that this request is unduly burdensome and not relevant or reasonably calculated to lead to the discovery of admissible evidence regarding class certification issues or issues on the merits of the case. Defendants respond that the request is relevant to the issues of typicality and adequacy . . . . Defendants further argue that the plaintiffs' trading history is relevant to rebutting the presumption of reliance . . . .
>
> The plaintiffs' investment history and background is relevant to the adequacy issue . . . . While plaintiffs are correct that sophistication alone cannot defeat a finding of typicality, a plaintiff's sophistication in combination with other factors regarding reliance are relevant to a plaintiff's ability to serve as a class representative . . . .
>
> Plaintiffs' trades in publicly held securities other than the defendant corporation for the period of time requested is also relevant to the issue of plaintiffs' reliance and motivation in bringing this action and may lead to the discovery of admissible evidence. Defendants are entitled to attempt to rebut the presumption of reliance [due to purported "fraud on the market"] and the requested documents bear on this issue.

*Id.* at 112.

Scores of other courts in securities cases have ordered compliance with similar discovery requests on the grounds that they are relevant to the merits of individual reliance, the issue of class certification, or both. *See, e.g., In re Grand Casinos, Inc. Securities Litigation*, 181 F.R.D. 615 (D. Minn. 1998) (court ordered production of documents regarding the general investment histories of the lead plaintiffs because such information could lead to the discovery of admissible evidence that could serve to rebut a presumption that they relied upon the integrity of the market for purposes of class certification and could lead to the discovery of admissible evidence as to

the ultimate merits of the plaintiffs' claims); *In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*, 838 F. Supp. 109, 113-14 (S.D.N.Y. 1993) (discovery of named plaintiff's trading history is permitted because investor sophistication may be relevant to "typicality" and to merits of individual's claim of reliance) (compiling numerous similar authorities).[21]  Plaintiffs have no basis for withholding documents regarding all of their investment activity.

---

[21] *See also In re ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fun (Retirement Accounts) II, L.P. Sec. Litig.*, 149 F.R.D. 506, 508 (D. Del. 1993) (sophistication of plaintiffs may not only go to their individual reliance but "may subject them to unique defenses and render them atypical class representatives"); *Weiner v. Bach Halsey Stuart, Inc.*, 76 F.R.D. 624, 626 (S.D. Fla. 1977) ("In a suit wherein the sophistication of the purchaser is an important matter for consideration, this court cannot find that defendant's request [for brokerage records] is incompatible with the scope of discovery permitted under the Federal Rules"); *In re Scimed Life Sec. Litig.*, 1992 WL 413867, at *3 (D. Minn. Nov. 20, 1992) (recognizing "the importance of the defendant's need to conduct discovery concerning Plaintiffs' entire investment history and background" in connection with rebutting an assertion of the "fraud on the market" presumption, and ordering the production of customer agreements, account statements, margin agreements, correspondence concerning securities purchases, and documents concerning the purchases and sales of securities); *Feldman v. Motorola, Inc.*, 1992 WL 137163, at *1-2 (N.D. Ill. June 10, 1992) (when securities fraud class action complaint alleges fraud on the market, "this court agrees with defendants that the brokerage statements are relevant to the merits of plaintiffs' federal securities law claim"); *Goldman v. Alhadeff*, 1990 WL 86882, at *3 (W.D. Wash. 1990) (ordering production of plaintiffs' entire investment portfolio and securities transactions for three year period, the court "sees no need to distinguish between merits discovery and class discovery" where both have already begun); *Shields v. Smith*, No. C-90-0349 FMS, 1991 WL 319032 (N.D. Cal. Nov. 4, 1991) (court reviewed documents reflecting plaintiff's investment records and found clear evidence that plaintiff's purchasing of stock in troubled companies to possibly pursue litigation was a serious defense raising questions concerning the materiality to plaintiff of the integrity of the market and his reliance on misrepresentations so that the plaintiff failed to satisfy the typicality requirement); *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) (evidence of a proposed class representative's extensive securities experience demonstrated that the representative failed to meet the typicality requirement for class certification because his reliance on the integrity of the market would be subject to serious dispute and unique defenses which would not likely be raised against other members of the proposed class); *In re Grand Casinos, Inc.*, 181 F.R.D. 615, 619-21 (D. Minn. 1998) (discovery of lead plaintiff's investment history relevant to class certification); *Barry B. Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports & Recreation*, 165 F.R.D. 108 (M.D. Fla. 1996) (discovery of named plaintiff's investment records, sophistication and trading strategies was relevant to pending class certification motions).

3.    **Reservation of Right to Compel Additional Information and Documents**

This motion is being filed on an emergency basis to enable defendants to be able to depose the plaintiffs and their experts as scheduled. ZixCorp reserves its rights to supplement this motion or file additional motions with respect to the additional deficiencies in plaintiffs' discovery efforts.

## CONCLUSION AND PRAYER

For all the reasons set forth above, defendant ZixCorp respectfully requests that the Court grant its Motion to Compel Production of Documents and Responses to Interrogatories, order plaintiffs to provide complete responses and documents by May 14, 2007, grant ZixCorp fees and costs in connection with this motion, and grant such further relief as the Court deems just and proper.

Respectfully submitted,

FULBRIGHT & JAWORSKI L.L.P.


_/s/ Anne M. Rodgers_

Gerard G. Pecht
State Bar No. 15701800
Anne M. Rodgers
State Bar No. 17133025
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Telecopier: (713) 651-5246

ATTORNEYS FOR DEFENDANTS

Of Counsel:
Karl G. Dial
State Bar No. 05800400
Fulbright & Jaworski L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone: (214) 855-8050

## CERTIFICATE OF CONFERENCE

The undersigned certifies that she attempted to confer with counsel for plaintiffs on

Friday, May 4, 2007, but plaintiffs' counsel advised that they were not available until Monday,

May 7, 2007. Accordingly, a telephone conference was held with plaintiffs' counsel on May 7,

2007, regarding defendant ZixCorp's discovery requests to plaintiffs and plaintiffs' objections

and responses thereto, including their objections to providing the information sought in this

motion to compel. The email exchange attached to this certificate of conference, which followed

the telephone conference among counsel, outlines the parties positions. As is apparent from the

email, agreement could not be reached and therefore, this motion to compel is necessary.

_____*/s/ Anne M. Rodgers*_____
Anne M. Rodgers

### Rodgers, Anne

| | |
|---|---|
| **From:** | Lawrence D. McCabe, Esq. [lmccabe@murrayfrank.com] |
| **Sent:** | Monday, May 07, 2007 3:03 PM |
| **To:** | Rodgers, Anne |
| **Cc:** | 'Christopher Nelson' |
| **Subject:** | RE: Zix - Orders |

We have reviewed materials, and although we will produce those Class Period transaction records our clients possession, we will not provide you with the identities of our confidential witnesses. As the clients do not have knowledge of the identities of these witnesses, we see no need for the motion to be put on an "emergency" footing. If you so move, we will inform the Court of the abuse of the process.

---

**From:** Rodgers, Anne [mailto:arodgers@fulbright.com]
**Sent:** Monday, May 07, 2007 3:48 PM
**To:** Lawrence D. McCabe, Esq.
**Cc:** Christopher Nelson
**Subject:** RE: Zix - Orders

Larry, I just tried to leave you a voicemail but your mailbox is full. Your cases, neither of which is a PSLRA case, do not change our view that we are entitled to discovery regarding the alleged confidential sources and plaintiffs' investment histories and strategies. Let me know if you have a change of heart. Thanks.

---

**From:** Lawrence D. McCabe, Esq. [mailto:lmccabe@murrayfrank.com]
**Sent:** Monday, May 07, 2007 2:25 PM
**To:** Rodgers, Anne
**Cc:** 'Christopher Nelson'
**Subject:** RE: Zix - Orders

Anne,
Rather than call you with our immediate response to the line decisions of a Magistrate Judge which fail to state a legal basis or reasoning for her conclusions, please review the attached cases and call me.

---

**From:** Rodgers, Anne [mailto:arodgers@fulbright.com]
**Sent:** Monday, May 07, 2007 2:47 PM
**To:** Lawrence Mccabe; cnelson@sbtklaw.com
**Subject:** Zix - Orders

Larry and Christopher,

The Northern District orders I mentioned are attached. We will hold off on filing the motion until later this afternoon. Please let me know if you change your position in the interim. Thanks.

Anne M. Rodgers
Fulbright & Jaworski L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-3797

Telecopy:   (713) 651-5246

## CERTIFICATE OF SERVICE

I certify that on May 7, 2007, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court, Northern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Roger F. Claxton
Robert J. Hill
Claxton & Hill
3131 McKinney Avenue, Suite 700
Dallas, Texas 75204

Marvin L. Frank
Murray, Frank & Sailer LLP
275 Madison Avenue, Suite 801
New York, New York 10016

Eric Lechtzin
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087

_/s/ Anne M. Rodgers_
Anne M. Rodgers